IN THE

# Supreme Court of Georgia,

## AT ATLANTA.

### MARCH TERM, 1887.

PRESENT—LOGAN E. BLECKLEY, . . . . . . CHIEF JUSTICE.    78  359
                                                         106  793
SAMUEL HALL, . . . . . . . . . ASSOCIATE  "              ‾78‾‾359‾
M. H. BLANDFORD, . . . . . . . ASSOCIATE  "              107  495
                                                         ‾78‾‾359‾
                                                         111  556

FOUCHE', assignee, et al. vs. HARISON, executor, et al.   78  359
                                                         118  689

1. When a bill in equity, filed for direction, etc. by an executor against creditors of the estate and his own personal creditors, is brought to the Supreme Court by some of the latter, it is not necessary to make any of the defendants in the bill defendants in error. Leave to add some of them as co-plaintiffs in error by amendment, granted.

2. With proper parties to the writ of error, relatively to the cause actually tried below, exceptions taken *pendente lite* in the progress of the cause, such as exceptions to rulings on cross-bills, may be reviewed as to any errors affecting the final result.

3. Overruling exceptions of law to the master's report, is no final disposition whilst exceptions of fact are still pending and no verdict or decree has been rendered.

4. The judge, in adjudicating upon the master's report, takes the evidence as reported by the master. The master's report of the evidence is no less a part of the record than is the rest of the report, and the whole report should come up in the transcript. None of the evidence need be incorporated or referred to in the bill of exceptions.

5. Not to pay the master's fees is no contempt of court, unless the order for payment is peremptory as to time as well as to amount.

6. That the writ of error comes too late for some of the errors assigned, is no cause for dismissing the writ, but only for declining to consider the errors which are over age.

7. An executor who files a bill in his representative capacity is a party thereto in his individual capacity also, if, as an individual, he has a manifest interest in the subject-matter of the bill. Thus an executor, being a legatee to the extent of the net income of the whole estate during his life, and to the extent of one-fourth of the general *residuum*, having filed a bill as executor to restrain some of his creditors from subjecting his interest by proceedings at law, to which bill creditors of the estate, as well as some of his own, are parties defendant, and praying for a decree directing him, in view of the conflicting claims of the defendants, how to administer the estate of his testator, and that the defendants establish their priorities and show to what extent they can legally subject assets of the estate to the payment of their claims, is a party complainant, not only as executor, but likewise as legatee and debtor.

8. Having thus submitted the fund in controversy, and the rights of all parties to participate therein, to the jurisdiction of equity, the complainant cannot, pending the bill, convey his interest in the estate to a portion of his creditors in liquidation of their claims against him, to the exclusion of another portion, especially whilst the latter are held in check by a restraining order granted in the cause at his instance.

9. Without settling with the restrained creditors upon equitable principles, there can be no proper disposition made of the bill, and in order to do equity to them, it is necessary to eliminate from the general assets of the estate the value of the executor's two personal legacies and apply the same to his debts.

July 5, 1887.

Practice in Supreme Court. Parties. Service. Master in Chancery. Auditors. Evidence. Bill of Exceptions. Amendment. Contempt. Administrators and Executors. Before Judge RONEY. Richmond Superior Court. October Term, 1886.

On November 1, 1880, William H. Harison, as executor of his deceased wife, Mary G. Harison (formerly Jones), filed a bill, in Richmond superior court, against James S.

Warner, trustee, a non-resident, who was represented by attorney, and Frances L. and Anna M. Harison, individually and as executrixes, non-residents, represented by resident attorneys, William A. Walton and Joseph S. Bean, trustees, of said county, Robert H. Gardiner, a non-resident, Wallace S. Jones and Noble Jones, as executors of George Noble Jones, deceased, non-residents, the Mechanics' and Traders' Bank, of Tennessee, the Bank of Rome and numerous others of the classes of creditors stated hereafter. The bill and exhibits made, in brief, the following case :

The complainant's wife and her sister, Sarah Fenwick Jones (afterwards Gardiner), were tenants in common of a large amount of real estate in the city of Augusta, which they had inherited. Sarah F. intermarried with R. H. Gardiner sometime in 1842, and a marriage settlement was entered into between them, whereby all interest of Sarah F. was conveyed to trustees therein named, for the separate use of Sarah F. during the joint lives of herself and her husband, and to the use of the survivor of them for life, with remainder to the heirs by blood of said Sarah F. Afterwards, on January 8, 1852, the complainant and his wife were married, and a marriage settlement entered into between them, whereby the interest of the wife in the realty was conveyed to trustees for her separate use, containing a power to her of disposing of her separate property by deed, will or other writing, which power was exercised as hereinafter stated. After complainant's marriage, a division of the realty was had between the tenants in common. In 1863, the trustees of Sarah F. Gardiner, under power contained in her marriage settlement, sold to the trustees of complainant and his wife, the entire interest (with an unimportant exception), held by them under such marriage settlement, the consideration of the sale being two bonds for $40,000 each, and an agreement in writing, signed by Mrs. Harison's trustees and by complainant, whereby they granted to

R. H. Gardiner and wife, out of the trust estate pos-
sessed by them, an annuity of $5,000, payable semi-an-
nually, during the joint lives of Gardiner and wife and the
life of the survivor, Mrs. Harison giving, granting, limit-
ing, ordering and disposing of said annuity out of her sep-
arate and distinct estate. The bonds, for $40,000 each,
were signed in the same way and payable to the trustees
of R. H. Gardiner and wife immediately after the death of
the survivor. The object of executing these papers was,
first, to secure an annuity to Gardiner and wife, and
second, to create a debt from the trust estate of Mrs. Hari-
son, for the benefit of those entitled to the Gardiner es-
tate in remainder, after the termination of the life estate.
The annuity was regularly paid during the joint lives of
Gardiner and wife, and since her death has been paid to
him, he being still in life. Mrs. Gardiner died in 1869,
leaving as her only blood heirs, her sister (the wife of
complainant), and her brother, George Noble Jones. The
complainant's wife died October 21, 1870, and Geo. Noble
Jones died in 1878.

Complainant is advised that one of the two $40,000
bonds, payable on the death of Gardiner, has become, by
virtue of the marriage settlement of Mrs. Gardiner, the
property of the estate of complainant's wife, and the other
the property of the estate of Geo. Noble Jones, and that
the bond falling to Mrs. Harison's estate has thereby be-
come extinguished, but the other is a valid and subsisting
claim against the estate, payable on the death of Gardi-
ner, and that in the meantime, the annuity of $5,000 is a
subsisting claim against the estate, and that these debts
must be provided for in preference to the claim of any
legatee or of any grantee of such legatee. Upon the death
of Mrs. Harison, she left a will, which is set out in exhibit
B, the legatees under which are the Protestant Episcopal
Church of the Diocese of Georgia, or those whom it claims
to represent, the complainant and his three sons, Wm. H.
Harison, jr., R. M. Harison and Noble W. Harison. The

complainant, supposing the estate in his hands was ample to meet the debts due to Gardiner and the executors of Jones, above stated, and being desirous of providing for his son, Wm. H. jr., who had become of age, executed to him deeds conveying certain parts of complainant's wife's estate, in value about what his share would be upon a division of such estate after making allowance for prior claims thereon, with the exception of the annuity to Gardiner. In view of the liability of the estate to pay this annuity, it was understood between the complainant and his son that the rents of the property so transferred should be collected by the complainant and used in the payment of the liability of the estate; and this hitherto has been done. While these conveyances to his son purport to be for a valuable consideration, no consideration, in fact, passed, but the property was turned over to the son as an advance upon his claim as one of the residuary legatees, with the consideration above stated. A large amount of the estate left by the complainant's wife consisted of vacant lots in the city of Augusta, which yield no income and upon which the taxes amount to between three and four thousand dollars annually, and owing to the shrinkage of rents of the estate, the whole income is not quite sufficient to pay the necessary expenses and the annuity of Gardiner; and if the property conveyed to complainant's son be withdrawn from the estate, the income will be wholly insufficient to meet the charges upon the property so conveyed.

After making the conveyances to his son, the son mortgaged the same property to Wm. A. Walton and Jos. S. Bean, trustees, to secure the payment of $30,000 worth of bonds issued by him, the principal of which was to fall due on default of the payment of interest therein specified. Default has been so made, and the trustees threaten to foreclose the mortgage and sell the property. Wm. H. Harison, jr., mortgaged the property in one of the conveyances to him from complainant to James C. Warner, as trustee, to secure such notes of the firm of Hazelton &

Harison as Wm. H., jr., might thereafter endorse. Complainant is informed that Wm. H., jr., endorsed notes of the firm to the extent of about $18,000, and that all the notes have been protested for non-payment, and Warner is advertising the property for sale under the power conferred on him in the mortgage. The interest which the Episcopal church takes under the bequest to it in the will of complainant's wife is a matter of dispute and is the subject of pending litigation. Numerous creditors of the firm of Hazelton & Harison, of which Wm. H.; sr., was a member, and which lately did business in Chattanooga, Tennessee, are proceeding to enforce their claims against complainant. Some have taken out attachments, alleging that complainant is a non-resident, and have levied on his interest in the property received from his wife; others have sued and obtained judgments; still others have sued, but not yet obtained judgments. Creditors of Wm. H., jr., are likewise proceeding, some by levy of attachments, others by suits, and some have garnished the complainant individually, as executor and as trustee of his wife. If these various claims are allowed to proceed against the property, and those in suit to be reduced to judgments and levied, it will greatly embarrass him to administer the estate.

The complainant waived discovery and prayed for direction as to the administration of his testatrix; that the defendants should establish their priorities and show to what extent they could legally subject the assets of the estate to the payment of their claims; that the rights of creditors and legatees of the estate be protected; that Warner and Walton and Bean be enjoined from selling under the mortgages held by them; and that all the creditors of complainant made parties defendant to the bill, except the Misses Harison, be enjoined from levying upon any of the property of the estate, by attachment or otherwise, or in any manner attempting to subject it to the payment of their claims, until the creditors of the estate and the legatees who are not debtors to the defendants,

and whose claims are equal or superior to those of the complainant and Wm. H., jr., are provided for and secured; also for subpœna and general relief.

This bill was verified by the affidavit of Mr. W. W. Montgomery, who stated that his client was absent from the State, and that from information derived from said client, he believed the statements of the bill, where they related to complainant's acts and deeds, to be true; that he knew the statements in relation to the debts of Mary G. Harison and Geo. N. Jones were true, as also the statements in relation to the annuity of R. H. Gardiner, having drawn the papers creating these obligations; and that as to all statements in the bill relating to the acts and deeds of others, he believed them to be true.

Attached to the bill as exhibits were a copy of the annuity contract, dated August 31, 1861 (this shows no entry of having been recorded); a copy of the bond for $40,000 to the trustees of Gardiner and wife; the will of Mary G. Harison, headed "Georgia, Richmond county," the body of which was as follows:

*First.* To my husband, William H. Harison, hereinafter appointed sole executor hereof, I give and bequeath the entire net income of my estate, of whatsoever consisting, for and during the term of his natural life, and invest him, as executor, with full power to control and manage said estate as he may think proper, and *especially* with the power, in his own discretion, without the order or permission of the ordinary or other officer, or of any court, by public auction or private sale, at such time and place and on such terms as he may deem expedient, to sell any part or the whole of my estate and invest the proceeds of sales thereof, and from time to time to change the investment of the same as he may think expedient. It is my will that no division of my estate be made during his lifetime, and that he shall be, and he is hereby, relieved from all obligation to make any inventory whatever of my estate or any returns to the ordinary, or to any other officer or person, of his actings and doings as executor under this my last will and testament.

*Second.* It is my will, and I so direct, that of the net value of my estate as it may be estimated at the time of the payments about to be provided for, one-tenth (1-10th) part, assumed for present purposes, to be equal to fifteen thousand dollars ($15,000), shall be devoted, and I hereby devote the same, to charitable uses in the man-

ner following, that is to say : *First,* I set apart and appropriate five thousand dollars ($5,000) to the purchase of a church lot in the city of Augusta, and the erection thereon of an Episcopal church for the use of persons of color, to be consecrated as soon as convenient, and title thereto vested in the bishop of the diocese. Hoping that others may hereafter contribute to this good work, and thereby render unnecessary the expenditure of this entire sum of five thousand dollars in the purchase of a lot and the erection of a church edifice, I desire that whatever may, after such purchase and erection, remain of the sum thus appropriated under this will, shall be by my executor safely invested to the best advantage, and the income derived therefrom applied to the support of said church by those who may have charge of its secular interests. *Secondly,* to the treasurer, for the time being, of "The Permanent Fund for the Support of the Episcopate in the Diocese of Georgia" (of which Dr. James Camak is now treasurer), I set apart and give the like sum of five thousand dollars ($5,000) ; and *thirdly,* the like sum of five thousand dollars ($5,000) to the "Trustees for the Relief of Widows and Orphans of Deceased Clergymen of the Episcopal Church of the Diocese of Georgia" (of which the wardens of Christ Church, Savannah, are the trustees).

*Third.* If the said one-tenth (1-10th) part of my estate should fall short of the sum of fifteen thousand dollars (assumed in the preceding clause), it is my will, and I so expressly direct, that the sum of five thousand dollars, first above mentioned (set apart for church lot and edifice), shall not be reduced or in anywise diminished, but that the two last mentioned sums of five thousand dollars each shall be equally reduced, so as to bring the aggregate of the three down to the then ascertained amount of one-tenth (1-10th) of my estate. If, on the other hand, one-tenth (1-10th) part thereof should exceed the said assumed sum of fifteen thousand dollars ($15,000), it is my will, and I so direct, that the surplus or excess over and above that sum shall be applied to charitable purposes by my husband, or in case of his dying testate before the execution of this portion of my will, by the qualified executor or executors of his last will; and

*Fourth.* In case it should hereafter appear that there is any misnomer or defect in the designations of the persons or associations intended to be legatees or beneficiaries under the second (2d) clause of this will, or any real or supposed want of capacity in them or any of them to take under the same, having, as I think, made my intentions evident to others, as they are well known to my husband and intended executor, I hereby invest him with full power so to dispose of the said one-tenth (1-10th) part of the net value of my estate as will prevent any failure of my said intentions in relation to the same. To prevent possible detriment to my estate and inconvenience to my executor in providing for the several sums above bequeathed, it is my will that the time of payment thereof shall be determined by the

executor himself, in his own uncontrolled discretion, and that no interest shall accrue on said sums, or either of them, by reason of any delay in the payment thereof.

*Fifth.* All the rest and residue of my estate, subject to the provisions hereinbefore contained, I give, bequeath and devise to my husband, the said William H. Harison, in the manner following; that is to say, one-fourth (1-4th) part thereof to him, the said William H., as his own absolute property; and the remaining three-fourths (3-4ths) to him as trustee, for the use and benefit of our surviving children, *upon the following trusts:* that is to say, in trust that he will, by deed or provisions to that effect, to be contained in his last will and testament, convey, transfer and secure the said remaining three-fourths (3-4ths) of said residue for the use and benefit of our surviving children in such proportions, equal or unequal, as he may deem expedient, either directly to them in their own right or to such trustee or trustees as he may select, and under such conditions, limitations, and trusts as he may deem it expedient to provide in the case of each of said children. If my said husband should depart this life without having, by deed or will, provided for the disposition to be made of the said three-fourths of the residue of my estate, as above authorized, it is my will that the same shall be equally divided among my surviving children, share and share alike.

*Sixth.* I nominate, constitute and appoint my husband, the said William H. Harison, executor of this my last will and testament, written on this and the three preceding pages, identified by my signature in the margin of each of them.

(This will was attested by three witnesses and admitted to record at Newark, N. J., December 29, 1875. The probate and copy of the recorded will was certified January 3, 1876, and attached is a certificate from the ordinary of Richmond county, dated January 21, 1880, that the transcript and probate are true and correct copies from the records of the court of ordinary.)

The following also were attached as exhibits to the bill: Abstracts of the deeds from the complainant to Wm. H., jr., purporting to be for a valuable consideration, and one of them having the consent of Richard M. Harison upon it. One of these deeds, made August 1, 1878, recites the will, the authority of the executor thereunder, the deeds previously made, and concludes as follows:

"I, William H. Harison, of Newark, N. J., individually and as life tenant and remainderman, and as trustee and executor, with tes-

tamentary power as to the three-fourths interest in remainder under said will of Mary G. Harison, hereby ratify, confirm and make good and effectual against me in any and every way whatsoever, and also the estate of William H. Harison, the said lots of land heretofore conveyed to William H. Harison, jr., on payment therefor, and I hereby covenant irrevocably with said William H. Harison. jr., his heirs and assigns, never, by deed, will or otherwise, to make or seek to make any other or further disposition of said land or any part thereof other than now made, nor to hold him or his assigns at any time hereafter responsible for the use or enjoyment of the same; this covenant to be binding on me in every way known to the law, and to be considered binding, in the event of my dying intestate, as a deed made pursuant to said will disposing of the *residuum* to the extent of the said land hereinbefore described."

A copy of the mortgage to Walton and Bean, trustees, to secure the $30,000 worth of bonds covering certain of the property conveyed to William H., jr., and containing a power of sale, also was exhibited. Also a mortgage from Wm. H., jr., to Warner, trustee.

On October 28, 1880, the judge to whom the bill was presented passed an order, calling upon the defendants to show cause why injunction should not issue, and providing " that this order do operate as a restraining order to enjoin and restrain each and all of said defendants in accordance with the prayer of said bill, until the further order and decree of the court."

To this bill, on November 5, 1880, certain of the creditors filed a demurrer on the grounds that there was no equity in the bill; that there was a want of proper parties; that there was an adequate remedy at law; and that complainant had not complied with the fourth equity rule and annexed exhibits of the papers set out in the bill. This demurrer was subsequently amended by adding a ground that the sons of the complainant, and the complainant in his capacity of trustee, had not been made parties; also that the bill was not supported by any proper affidavits, that of the solicitor being insufficient, and there being no affidavit of want of collusion between the complainant and either of the defendants, nor that the bill was not

filed to hinder and delay; that the complainant is estopped by the terms of the deed exhibited to the original bill, made August 1, 1878, he having, as life tenant, remainderman and trustee with testamentary power, conveyed a portion of the property therein described; because the bill fails to set out the laws of New Jersey, where the complainant was appointed executor, or invoke the comity of States to be recognized; and because no steps have been taken to perfect service upon any creditor or legatee of Mary G. Harison set out in the bill, or to bring before the court any parties but the individual creditors of the executor.

On November 25 and December 4, 1880, before the hearing on the rule to show cause against the issuing of injunction, the Mechanics' and Traders' Bank, the Bank of Rome and others filed answers and cross-bills, making, in brief, the following case:

The defendants admit that they are creditors and have instituted suits by attachment and at common law, and that the attachments have been levied on the life estate and remainder interest of Wm. H. Harison passing under the copy will found in the office of the ordinary of Richmond county; they admit the marriage settlement between the Gardiners and Wm. H. Harison, the deed of partition between the tenants in common and the conveyance by the Gardiner trustees on August 31, 1861. They have no knowledge of the papers beyond the records, and they pray strict proof as to them. They deny that the contract as to the annuity or the bonds made, constituted any lien on the property, but aver that if valid they created only a simple debt, payable from such property as was conveyed by the Gardiner trustees. They admit that Mrs. Harison died testate, and that her will was probated at Newark, N. J., but say that beyond this the complainant has done nothing, and has not filed anywhere an inventory or statement of the property owned by her at the time

v 78-24

of her death, and has not qualified or undertaken to qualify under the will in Georgia. They deny that the deeds from complainant to his son, Wm. H., jr., were without consideration, and say that when the third deed was made, Wm. H., jr., executed and delivered to the executor a receipt for $46,000, as an advance to him under the fifth item of the will, and for which he should account without interest, if so directed by the will of the executor, as a portion of his share in remainder. They admit the rendition of the common law judgments and the proceedings had under the attachments. They allege that complainant was a resident of New Jersey at the time of the issuing of the attachments against him, and was insolvent. By way of cross-bill, the defendants prayed for the appointment of a receiver; that all liabilities of the testatrix, including the annuity, be determined to be paid only out of the property conveyed to the guardian and trustees; that complainant be required to file an inventory of the property of the testatrix at the time of her death, a statement of sales made by him, his vouchers for payments to R. H. Gardiner, or any child of complainant, as an advancement or otherwise; that a decree be rendered, directing the receiver to sell all the property passing under the will of complainant's testatrix within the State, to pay the debts and the legacy of the Episcopal church; to apply the commuted value of the life estate of complainant with his one-fourth interest in remainder to the payment of his debts; to require Wm. H. Harison, trustee of his children, to charge the interest of Wm. H., jr., with the value of all property turned over to him, and in the event it is sold and does not pay the mortgage, the defendants claim to direct payment out of the *residuum* coming to Wm. H., jr., under the will; to require complainant, as trustee for his children, to charge the interest of R. M. Harison with all the liability of a surety on the bonds filed in the ordinary's office of Richmond county, under which the executor undertook to comply with the act of the legislature of Georgia of

February 28, 1876, and made sales of the property of the estate, without paying its debts or the legacies under the will. Some of the defendants charged, on information and belief, insolvency of the complainant, of Wm. H. Harison, jr., and of Hazelton & Harison.

Exhibited to the cross-bill were copies of the receipt from Wm. H. Harison, jr., to Wm. H., executor, dated August 1, 1878; also a deed, dated the same day, reciting that the executor had filed and obtained the approval of bonds by the ordinary of Richmond county, and was authorized to sell the real estate under the will and ratify the conveyances previously made on payment of the purchase money described in the deeds.

On December 6, 1880, the complainant amended his bill by making Wm. H. Harison, jr., R. Morley Harison and Noble W. Harison, children of complainant and testatrix, and Wm. H. Harison, as trustee under the will, parties. On the same day, his attorney acknowledged service on the cross-bills.

On January 3, 1881, the chancellor, after hearing the application for injunction and receiver on the original bill, refused the injunction as to the parties claiming under the mortgages of Wm. H. Harison, jr., and granted it "as to all the creditors of legatees or devisees of Mrs. Harison, so far as to restrain them from levying their executions against said legatees or devisees upon any property of said Mrs. Harison's estate now in the hands of the executor; not restraining said creditors who have not as yet obtained judgment on their claims against such legatees or devisees from proceeding to do so." The injunction prayed for as to the attachments of the Mechanics' and Traders' Bank, which were levied upon the equity of redemption in the property mortgaged by Wm. H. Harison, jr., to James S, Warner, trustee, and Wm. A. Walton and Jos. S. Bean, trustees, was refused as to that property. The receiver prayed for in the cross-bills of the defendants was refused.

On April 20, the defendants filed an amendment to

their answers and cross-bills, alleging, in brief, as follows: At the April term, 1881, of court, they obtained judgments against Hazelton & Harison and Wm. H. Harison, individually, upon the evidence of indebtedness set out in the original answer. Wm. H. Harison, the only defendant served personally in these common law cases, is now totally and entirely insolvent. The defendants are enjoined from enforcing their executions under the order of January, 1881, and there is no other property in Georgia subject to levy, in which Wm. H. Harison has any interest, except that passing to him by virtue of his marriage settlement with Mary G. Harison, and which he is now in possession of as executor of her will, admitted to probate at Newark, N. J., where she and all of the complainants resided at the time of her death, 1875. Under the laws of New Jersey then and now of force, the husband was entitled, in the event the testatrix left children, to a life estate by courtesy in all her land, regardless and independent of any provision contained in her will to the contrary, which life estate is subject to levy and sale, independent of the provisions of the will; and the law is applicable to all the complainants and all persons dealing with them by private contract as to rights and interests passing under the will. On Saturday, April 16, when the defendants' solicitor made inquiries of F. W. Capers, jr., Esq., named in the bill as one of the solicitors of Anna M. and Frances L. Harison, respecting the suits instituted by them, which were endorsed to the April term, 1880, of court, defendants' solicitor learned that, although the dockets of the court showed the granting of an award on December 4, 1880, service was not perfected until June 1, 1880, and the award had not been entered on the minutes of the court; that while the restraining order of this court was of force, the complainant, with full knowledge thereof, by himself and the solicitor of Anna M. and Frances L. Harison, had signed and undertaken to deliver to said solicitor an instrument whereby he sought to convey to the said

Anna M. and Frances L., individually and as executrixes of J. C. Harison, in settlement of an indebtedness, all the interest to which he was entitled by virtue of the will in all that part of the estate of his wife remaining in his hands and not previously disposed of, such interest being described in the instrument as the right to receive and enjoy the net income of such estate remaining in his hands for and during his natural life. This paper was sent on April 16, 1881, by F. W. Capers, jr., Esq., to W. W. Montgomery, Esq. On Tuesday, April 19, defendant's solicitor called upon the solicitor for the complainants to ascertain why Anna M. and Frances L. Harison, individually and as executrixes, Robert H. Gardiner and the executors of George Noble Jones, had not been served or a return made. In the conversation which ensued, he learned that the complainant, Wm. H. Harison, had, at or about the time of making the instrument just above stated, executed an instrument purporting to convey to Wm. H., jr., his "one-fourth part of the remainder vested in said Wm. H. Harison, under the provisions of the will of said Mary G. Harison, in payment of liabilities assumed by said Wm. H. Harison, jr., for the firm of Hazelton & Harison, of which W. H. was a member." It was averred that, until the payment of the legacies passing under the will, and the creditors holding claims against the estate of Mary G. Harison, the original complainant had no interest as life tenant or remainderman, under the laws of either New Jersey or Georgia, and that the above stated conveyances are absolutely void. The conveyance to Anna M. and Frances L. is void as a deed for uncertainty, for failure to describe the property with sufficient certainty, as violative of the interlocutory order of the court, for inadequacy of consideration, for want of proper delivery, because it purports to convey property not in possession at the time, and if intended as a mortgage or preference, it never was recorded prior to the filing of the amended answer and the judgments at common law. These defendants are *bona fide*

creditors of Wm. H. Harison, and extended credit to him on the faith of his ownership of a large amount of real estate located at Augusta, Ga., the particulars of which they never knew until after his failure, but which is the property now in his possession. The marriage settlement between Wm. H. Harison and his wife is not valid against these defendants, because it was not recorded within three months after its execution in the county of the residence of the husband and wife. It was executed beyond the limits of this State, and was recorded December 31, 1852, without probate or valid attestation. Such imperfect record, and actual notice thereof since their debts were created, cannot affect the rights of creditors or their judgment liens. The property now in the hands of Wm. H. Harison, executor, as shown by his tax returns of June 30, 1880, amounts to $235,150. Since the grant of the injunction of January 30, 1881, he has taken no steps to perfect service upon the other defendants. The bill cannot be finally passed upon until the April term, 1882; and it is the object of the complainant to retain possession, use and enjoyment of the income without making returns, to deprive all but his children and sisters from obtaining anything upon their claims, and to make sales of land as a foreign executor.

The prayers were to enjoin the complainants from dismissing their bill as to each other or the defendants; to enjoin Wm. H., jr., and Anna M. and Frances L. Harison, individually or as executrixes, from conveying or creating liens upon the property of which conveyances were made to them as described above; to prevent any alteration in the existing condition of the litigation or property in controversy; that the conveyances to Wm. H., jr., and to Anna M. and Frances L, made pending the bill, be cancelled and set aside, both as a deed and mortgage; that Wm. H., jr., and Anna M. and Frances L., individually and as executrixes, account with the defendants as to the validity and justice of the indebtedness sought to be pre-

ferred; that the marriage settlement be declared void as against the defendants, and the will of Mary G. Harrison be construed; that a receiver be appointed, with authority to collect rents, make sales and hold the proceeds; that the case be referred to an auditor or master to take testimony and render an account as to interest of all parties, creditors, legatees and heirs, and how to account; that all the parties be required to interplead, and a final decree be rendered making proper distribution; and for general relief; the prayer being without prejudice to the judgment or attachment liens of the defendants.

Attached to this cross-bill as an exhibit was the conveyance from Wm. H. Harison to Anna M. and Frances L. Harison, having attached to it after the signature, and referred to as so attached, a schedule of the property.

A temporary restraining order and rule *nisi* was granted April 21, 1881. Service was acknowledged by complainant's solicitor on April 28, and was perfected on Wm. H. Harison, jr., personally, on May 2.

The defendants, the Mechanics' and Traders' Bank *et al.*, on April 27, 1881, filed a plea, alleging, in brief, as follows: Wm. H. Harison, named as executor of the will of Mary G. Harison, is a large creditor of the estate and indebted thereto to the amount of $100,000, of which debt he has not undertaken to enforce payment in any way, and it is well known to exist by each of the complainants and by each of the persons alleged by the original bill to be creditors of the estate. This indebtedness arose in the following way: After his marriage, he was appointed attorney in fact for George Jones and George J. Pollock, two of the trustees, until after a division with them as trustees of Mrs. Gardiner, when he became attorney for all of the trustees named in the marriage settlement between himself and wife, and as such made numerous sales of the assets of the estate, until Robt. H. Gardiner, the other trustee, removed from the State of Georgia, the same being made with Gardiner's express knowledge, from December 29, 1852, to

August 31, 1861, the date of his removal. During this time, large sums of money of the assets of the estate came into the hands of said Wm. H., and so remained August 31, 1861, with the knowledge and consent of said Robert H. and his co-trustees and George Noble Jones, all of whom accepted the bonds, etc. described in the original bill, with full knowledge that said Wm. H. then had a sufficient sum to pay off the consideration coming to them and the trustees of Sarah F. Gardiner for the property then conveyed. From August 31, 1861, until the death of Mary G. Gardiner, said Wm. H. acted as sole attorney in fact of the trustees (all of whom, except Gardiner, resigned December, 1860,) and received the proceeds from sales made of the assets of the estate; he has used them for his sole benefit, and realized from the proceeds of cotton during the war, and sales thereafter, and other property acquired since, large profits which he has never paid over or accounted for. He is now indebted to the trust estate the sum of $100,000, and as such debtor, retains the property of the testatrix; and he has made no inventory of his debt or return to any court whatsoever.

On February 24, 1880, the complainants and the creditors set out in the original bill filed a bill against the Episcopal church, which is claiming the legacy for charitable purposes under the will, and to enjoin an application for administration with the will annexed of Mary G. Harison, in Georgia. In this bill the creditors of George Noble Jones alleged that, as creditors, they were entirely satisfied with the administration of Harison, and protested against any change in such administration; and R. H. Gardiner made like allegations. This was advisedly done, with information of the previous acts of Harison, and estops these complainants from seeking injunction against these defendants.

On April 29, 1881, the defendants filed a notice of an intention to move for a rule against Wm. H. Harison, individually and as executor and trustee, to show cause

why he should not be attached for contempt in executing the conveyances of December 4, 1880, after obtaining the restraining order of October 28, and after Wm. H., jr., had been made a party complainant; also for the appointment of a receiver; also for the revocation of the order of January 3, 1881, granting an injunction; also that the case be referred to a master in chancery to take testimony, investigate and report as to the matters of law and fact at issue, and the validity, character and amount of claims held by creditors, heirs and legatees of Mary G. Harison, and to have determined whether the estate ever went into the possession of Wm. H. Harison, life tenant or trustee, and if so, in what capacity; what advances had been made to the remaindermen, with the amounts, character and the time and circumstances thereof; and to determine what conveyances had been made by the original complainants to any of the defendants or co-complainants or otherwise; and what is the value of the life estate of Wm. H. Harison, and the remainder subject to his disposition in case he had not become insolvent, and the legacies and debts of the estate unpaid; also for an order to make parties of all the defendants not served, and thereafter, to proceed to sell all the property of the testatrix in the possession of the original complainant free from liens, and pay off the same according to their priorities; also giving notice to produce the original deed exhibited to the bill, and the deed to W. H. Harison, jr., set out in the cross-bills, and the books and accounts showing amounts received by complainants from the property of the testatrix. This was served April 29, 1881.

On May 21, the defendants again amended their answers and cross-bills, alleging, in brief, as follows: They adopt the allegations of the plea above stated, and set out extracts from the sworn answer of Wm. H. Harison, executor, to the bill filed by the Episcopal church in aid of the application for the appointment of an administrator with the will annexed, and for the purpose of ob-

taining the legacy under the will of Mary G. Harison. Among these extracts is a statement that the executor could not give the actual value of the estate of the testatrix at the time of her death, but gives an estimate, making the net amount $193,855. He alleged that the whole of the estate, with the exception of a bond for $9,000, was in Georgia; that the income was $59,877.65; commissions, repairs, insurance and annuity for R. H. Gardiner were $67,358.33, showing a deficit of $7,481.68; in income and net proceeds, $22,535.54. The only payment made to residuary legatees was to Wm. H. Harison, jr., of the three pieces of property, of which the city valuation was $63,000. No money was paid for them, and a conveyance was made at the joint request of the two elder sons, Wm. H., jr., and R. M. Harison, both of full age, and for the benefit of both. He also stated that he had no real or personal property in Georgia, other than that derived from the will, and that he expected to contest the application for administration in Georgia. R. H. Gardiner ceased to be a citizen of Georgia on August 31, 1861, and the statute of limitations has ceased to run against him. As co-trustee under the marriage settlement, and as sole trustee from their resignations in March, 1869, and by express delegation of his authority in favor of Wm. H. Harison, he has become reponsible for all waste committed on the estate by Wm. H., and for all proceeds of sales of land not accounted for by the latter, amounting to over $100,000. None of this indebtedness was set out in the answer of Wm. H. Harison, above stated, and both he and R. H. Gardiner entirely failed to recognize it or to make payment to the estate. The children of Wm. H. and Mary G. Harison are of full age, and they failed and refused to hold their father and uncle liable to their mother's estate in Georgia or New Jersey. Wm. H. has never filed an inventory or return anywhere, and claims to be a resident of Georgia without domicile elsewhere. Under the laws of New Jersey, a life tenant cannot re-

ceive his estate until bond and security is given to account to the remaindermen, and this William H. does not demand from Frances L. Harison and Anna M. Harison, to whom he has seen fit to convey it away.

The prayers were that Wm. H. Harison, as attorney in fact of the trustees under the marriage settlement between himself and his wife, be required to account fully and particularly for all the *corpus* of the estate received, and the disposition made thereof up to the death of testatrix; that the debt found to be due by him individually be determined against him, and until the same is paid, a decree be rendered that no net value of the estate passed to him for life, nor any remainder now or hereafter subject to alienation by him, and that as such debtor residing in Georgia, in the position of a foreign executor, until full payment is made by him, shall not assent so as to make valid the conveyance of the property devised to him, and defeat the rights of the judgment creditors; that R. H. Gardiner, trustee under the Harison marriage settlement, be required to account for all their liability, and any amount found to be due by Robt. H. Gardiner, as trustee or individually, be set off against his annuity, if the sum is found chargeable against the whole or any part of the estate, and for any excess, a decree be rendered against him personally, anything to be found due Gardiner or the executors of Jones, being chargeable only on the land remaining unsold that passed under the provisions of the Gardiner marriage settlement; that the debt claimed in favor of the executors of George Noble Jones should only be payable from the proceeds of the same property; that the sisters of the executors be required to give bond and security to conform to the New Jersey law, before they can receive property conveyed to them, if the conveyance is found valid; and that Wm. H. Harison, jr., render a full and complete statement of what indebtedness he had become liable for December 2, 1880; what portion of it was in judgment, and in whose favor any arrangement to re-

convey was made; that a receiver be appointed; and that all this relief be subject to the rights of any legatee or creditor or other person in interest, to have administration granted with will annexed.

On October 17, 1881, a demurrer was filed to these cross-bills for want of equity; because no facts authorizing the grant of an injunction and receiver were set out, and the cross-bills were not properly verified by affidavit; and because the marriage settlement attacked was not attached as an exhibit, nor was it alleged that it was not probated, but only that the probate does not appear of record, nor is it alleged that the defendants attacking it were creditors during the coverture. This demurrer, on October 22d, 1881, was amended as to the claim of the cross-bills to subject the one-fourth interest in remainder of Wm. H. Harison which had been conveyed by him, on the ground that it appeared from the cross-bills and amendments that the whole estate of Mary G. Harison, without deducting any debts due by it, was only $235,150, and it further appears that Wm. H. is indebted to the estate in the sum of $100,000.

On October 17, 1881, Wm. H. Harison filed an answer to the defendants' cross-bills, in brief, as follows : Admits the obtaining of the judgments, the insolvency of the complainant and the injunction obtained January 3, 1881. Denies that he is in possession of property passing to him by virtue of his marriage settlement with his wife, but says he is in possession by virtue of her will. Denies that he is a non-resident, but says he is a resident of Augusta, Ga. Admits that the will was probated in New Jersey, but denies that the laws of that State have anything to do with the case. Admits the conveyances of December 4, 1880, but says they were made *bona fide*, for a valuable and sufficient consideration, which is set out in detail. Denies that there was any restraining order on him at the time he made the conveyances. Asserts that they were delivered. Asserts that the marriage settlement was

properly recorded, but says its record is immaterial in the case. Denies that it is his object to retain possession and to use and enjoy the income without making returns, and to deprive all but his children and sisters from obtaining anything upon their claims. States, as an evidence of his good faith, that he offered to put his one-fourth interest in the hands of an assignee, to be sold for the benefit of his creditors, but the offer was not accepted. Says he has been greatly embarrassed and hindered by the course pursued by the defendants. Refuses his assent to the appointment of an auditor on the ground that he is advised that it is not a proper case therefor. Denies that R. H. Gardiner, the representative of Geo. Noble Jones and Anna M. and Frances L. Harison, individually or as executors, have been made parties, and says it is the business of defendants to make them so if they desire it.

On October 21, 1881, the chancellor passed the following order:

"This court having granted a rule *nisi* to show cause why an injunction should not issue, as prayed for in the answers and crossbill of the Mechanics' & Traders' Bank, filed April 20, 1881, and concurred in by the Bank of Rome and others, which rule *nisi* was returnable June 6, 1881, and an order having been taken by consent of parties, June 29, 1881, for a hearing of the same in vacation, with other matters specified in the order and the same having been continued by consent of all the solicitors until Monday, October 17, 1881, when the same came on to be heard in term time on the notice filed April 29, 1881, it was upon consideration that day and upon October 18, 1881; and after hearing the affidavits and other evidence submitted *pro* and *con*, and after the arguments of counsel as to the matters involved in the motion, ordered and decreed:

"*First.* That a rule *nisi* to show cause why he should not be attached as against William H. Harison, executor and trustee and individually, be, and the same is hereby, refused.

"*Second.* The appointment of a receiver is hereby refused.

"*Third.* The interlocutory order of January 3, 1881, is hereby affirmed and directed to remain of force.

"*Fourth.* The case, as made upon the original bill, the plea of the defendants and the several answers and each of them, with the matters at issue under them of law and of fact, is hereby referred to Hansford D. D. Twiggs, Esquire, master in chancery of this court, to

take testimony and to investigate and report as to all the matters at issue raised by the pleadings, pursuant to law and in conformity to the act of the General Assembly, approved September 24, 1881.

" *Fifth.* That the injunction asked for in the cross-bill be refused, and the temporary restraining order, granted thereon April 27, 1881, be set aside."

On the same day, on motion of defendants' counsel, he ordered service to be perfected by publication on Anna M. and Frances L. Harison, individually and as executrixes of J. C. Harison, and upon R. H. Gardiner and Wallace S. and Noble Jones, as executors of George N. Jones.

On October 22, defendants amended their answers and cross-bills, attaching a copy of the conveyance from Wm. H. Harison to Wm. H., jr., dated December 4, 1880 (without the schedule), and attacking it as illegal.

On October 22, the chancellor passed the following order :

" This case coming on to be heard in term time upon the demurrer filed November 5, 1880, to the original bill filed November 1, 1880, and also upon the amendments to the grounds of said original demurrer, it is, on motion of complainant's solicitor, ordered that said original demurrer and the amendments thereto be, and they are hereby, overruled.

"The case further coming on to be heard upon the plea filed by the Mechanics' and Traders' Bank, the Bank of Rome and others, at the appearance term, April 27, 1881, it is upon the demurrer thereto, verbally made, of the complainants, William H. Harison, executor, and of William H. Harison, jr., R. Morley Harison and Noble W. Harison, and of said William H. Harison, sr., as their trustee, made parties by order of December 6, 1880, ordered that said demurrer be sustained and said plea stricken.

"The case coming on further to be heard upon the demurrer filed by each and all of the said parties complainant to the relief prayed for in the cross-bills filed by the defendants, the Mechanics and Traders' Bank, of Chattanooga, Tenn., the Bank of Rome and others, November 25, 1880, December 4, 1880, April 20, 1881, and May 21, 1881, ordered that the same be sustained, and said answers and each of them, so far as the relief prayed for in the cross-bills, be, and the same are hereby dismissed.

"Ordered further that the case stand for trial upon the original bill, and parties complainant as amended December 6, 1880, on the matters alone responsive thereto in the answers of the several defend-

ants, exclusive of the matter set forth in the cross-bills of the defendants, filed as above stated."

The complainants filed exceptions *pendente lite* to the reference to a master. The defendants excepted *pendente lite* to the refusal to attach complainant, the refusal to appoint a receiver and to revoke the order of January 3, 1881, and to the revoking of the restraining order granted on the cross-bills. They also excepted *pendente lite* to the order of October 22, above set out, in so far as it sustained the demurrer of complainants to the plea of defendants and to their cross-bills, but did not assign error on the last portion of that order.

The defendants carried the case to the Supreme Court on this writ of error, and the complainants assigned error on their exceptions *pendente lite*. The decision appears in 68 *Ga.* 463. On the return of the remitter, the exceptions by defendants not adjudicated on the writ of error, were allowed to be filed as *pendente lite*. Service by publication was also declared by order, dated June 15th, 1882, perfected on R. H. Gardiner, W. S. Jones, executor of Geo. N. Jones (the other executor being dead), and Anna M. and Frances L. Harison, individually and as executrixes; and it was ordered that the case made by the complainants' bill and "said cross-bill, as to the relief prayed against them," proceed to trial at the next October term of the court. The defendants protested to the master against proeeeding before him on the following grounds:

(1) Because the motion to refer to the master was made by these defendants and granted over the objection of the complainants' solicitors, who filed exceptions thereto, *pendente lite*, October 27th, 1881, which have never been waived or withdrawn.

(2) Because the order of reference, dated October 21, 1881, was revoked by the order of October 22d, 1881, sustaining the demurrer of complainants to the relief prayed for in the cross-bill and amendments of these defendants, which order expressly directs the case to stand for trial

upon the original bill, as amended December 6th, 1880, and the matters responsive thereto, exclusive of the cross-bills.

(3) Because the order of reference has expired, the same never having been renewed at any succeeding term of the court thereafter, to-wit: April term 1882, or October term, 1882, or at the April term, 1883. That subject only to this protest and these grounds do the defendants, without waiving any right in the premises, and particularly objecting and averring that the hearing can be had only on their motion now join issue before the master.

This protest was overruled, and the hearing proceeded.

On December 31, 1883, the master made a report, the material portion of which was as follows:

The property sought to be made liable for the debts of Wm. H. Harison is his life interest in the net income of the estate left by the will of Mary G. Harison and the one-fourth interest in the remainder left him by the same. It will be kept in mind that the creditors who are seeking to subject this property are not creditors of the estate of Mary G. Harison, of which Wm. H. Harison is the executor, but creditors of Wm. H. Harison as ·a legatee under her will, and the property sought to be reached is legacies passing under the same. Before proceeding to a determination of the issues made by the pleading and by counsel for complainants and respondents respectively, I beg to call attention to a difficulty which confronts, in my judgment, the attaching creditors, so far as the levies of the attachments upon one branch of the property levied on is concerned, and which seems to have escaped the notice of counsel. It will be seen that these levies referred to were upon what is termed and treated as the life estate of Wm. H. Harison. Now did the will of Mary G. Harison leave a life estate in the land belonging to her estate, to her said husband? If so, I have failed to find it, and this is what has been levied on.

The language of the will, as contained in the first item on this subject, is as follows: " To my husband, Wm. H. Harison, I give and bequeath the entire net income of my estate of whatsoever consisting, for and during the term of his natural life." It may be said that this language necessarily imports a life estate in the land from which this income is derivable. I do not think so. There are certain incidents at common law which belong to every life estate in the land, unless expressly negatived by the instrument creating it. Do such incidents appertain to a legatee who, *ex vi termini,* is entitled only to

the "net income," and which income is subject to constant variation in value? How can such an interest be reached by a levy of any kind? On what is it to be levied, and what would the purchaser at a sale under such a levy take by his purchase, and what would the sheriff put him in possession of?

I know of no mode of reaching such an interest as, to my mind, Wm. H. Harison took by the will, except by resort to a court of equity, and the appointment of a receiver to take charge of the income and disburse the same. Now all that could be reached as to this particular portion of the property would be the net income, and that term, as I understand it in this case, means the residue which passes to the legatee after paying the taxes, expenses and liabilities of the estate. Granting, therefore, that the creditors had established in the proper way a lien on the interest specified, if there is no net income, there is nothing to be levied on, and the proof shows that, after payment of the taxes and expenses and the annuity of $5,000 annually (which latter is a yearly charge upon the property, so long as R. H. Gardiner remains in life), there is no net income left. I do not believe, however, that such an interest as Wm. H. Harison took by the first item of the will was leviable by attachment, and therefore the levies established no lien as to this life interest.

I come now to the main consideration of the two questions involved in the case, for there are but two. The first is, whether the attachments of June, 1880, are valid liens on either branch of the property levied on; and secondly, if not valid, whether the common law judgments, dated April 15th, 1881, are superior to the conveyances made by Wm. H. Harison to his son, Wm. H. Harison, jr., and to Frances L. and Anna M. Harison, dated December 4th, 1880. Now it is clear that if the said attachments were valid liens at the time they were levied, then the aforesaid conveyances, whether *bona fide* or not, are void as to them, having been made at a date subsequent to the levies of the same. Now were these attachments valid? It is urged by complainants that they are not for the following reasons: First. Because the ground of the attachments, as set forth in each of the affidavits, is not true, to-wit: That Wm. H. Harison resided out of the State, and that the said ground has been successfully traversed by the proofs submitted on this subject. Second. Because the interest of a legatee in an estate unadministered is not leviable under summary process. Third. Because the attachments were sued out against the firm of Hazelton & Harison, and the levies were made upon the individual property of Wm. H. Harison, which, it is claimed, cannot be done under the code.

As to the first ground, it is urged by the solicitor for the creditors that I have no power to pass upon it, because there is no legal evidence before me that the grounds of attachment were traversed at law, and that the evidence of W. W. Montgomery, Esq., W. H.

Harison and S. H. Crump on this subject was illegally admitted. While I do not think that this is a question of practical importance, for the reason hereinafter given, I think the evidence was proper to show the fact sought to be proved. Pending, however, the adjudication of the matters in issue at law and before the particular issue could have been tried upon the alleged traverses, equity acquired jurisdiction of the entire subject-matter, and the ground of attachment was expressly denied in the bill of complaint and distinctly formed a part of the relief therein prayed for. A court of equity having, therefore, acquired jurisdiction of the subject-matter, it is bound to pass upon the issue of residence or non-residence of complainant. While the evidence on this subject is to some extent conflicting, it will be found, upon a careful scrutiny, that the weight of the same in support of the claim of residence in the State is in favor of complainant. The testimony of Wm. H. Harison is both positive as to his residence in Georgia and of his intention to change his domicile; among other facts and circumstances to denote this purpose is the evidence of a letter offered in proof and written by the said Wm. H. Harison at a time when he could have had no knowledge nor entertain any expectation that the question of residence or non-residence would ever be made. After duly weighing this testimony, I am forced to hold that the traverse has been successfully maintained by the proof. Independently, however, of this question, I am of the opinion, and so decide, that the interest of a legatee in an estate not distributed or settled, and when no assent has been given to the legacy, is not liable to attachment. At the time the attachments were levied, the estate of Mary G. Harison had not been administered, nor the debts paid, and it nowhere appears by evidence before me that there was, either in express terms or by implication, an assent to the legacies levied upon. In legal effect, therefore, these legacies were at the date of said levies part and parcel of Mrs. Harison's estate, because no legacy passes to the legatee until the debts of the estate are paid, unless assented to. Indeed, it is urged by the solicitor for the creditors, as a reason why the conveyances by Wm. H. Harison to his son, and to Anna M. and Frances Harison, are void is, because the debts of the estate had not at that time been paid, and because there had been no assent to the legacies. If, therefore, this was true at the time of these conveyances, and that the said Wm. H. could not convey because he had no title in the property conveyed, how could he have an interest which could be levied on by attachment at a date prior in time to said deeds? Having shown that the levy of attachments must necessarily fall and are not valid liens upon the interest levied on, it is not necessary that I should pass upon the third ground of objection, to-wit: That as the attachments were sued out against the firm of Hazelton & Harison, the levy of the same could not be made upon the individual property of Wm. H.

Harison, although the position on this point is not without legal force.

The attachments having been eliminated from the case, there remains but one other question for determination, and that is as to the legality and validity of the conveyances made by Wm. H. Harison to Wm. H. Harison, jr., and to Frances L. and Anna M. Harison, dated December 4th, 1880. It is claimed by the solicitor for respondents that the master has no jurisdiction to pass upon the matter of said conveyances, because, under the order of reference, the same is not before him, the cross-bill which set forth the said deeds having been stricken on demurrer. It is replied, on the other hand, that at the date of the order of reference, said cross-bill had not been stricken, and that the law which governs the master is the said order which, when passed, embraced the issues made by the cross-bill and answers to same; tha t while the cross-bill was stricken, no order was passed by the court transmitting the same to the master; that it is his duty therefore to disregard this judgment on demurrer and proceed to the determination of the case as it existed when the order of reference was passed. Various authorities were cited in support of this position, but I do not think they determine the question. As I am expected to deal with this subject practically, suppose exceptions should be filed to this report and all the issues made by the pleadings submitted to the court and jury for trial. If I should disregard the judgment of the court striking the cross-bill, the court that passed the order certainly would not. If, therefore, the order striking the cross-bill does in law necessarily exclude the consideration of the subject-matter of these deeds, how could the court determine rights not before it in the pleadings, and what is the practical good of having the cross-bill before me which could not be before the court upon the trial of exceptions? I do not, therefore, sustain the position of complainant on this point. It is further urged, however, by complainant that the order referred to only dismisses the cross-bill "as to the relief prayed for therein."

It is true that the order further recites "that the case stand for trial upon the original bill, and parties complainant as amended December 6th, 1880, on the matters alone responsive thereto in the answers of the several defendants, exclusive of the matters set forth in the cross-bill of the defendants filed as above stated." While, therefore, this language of this order seems to fully dispose of all the issues formed by the cross-bills, it will be observed that the first paragraph qualifies it to the extent of dismissing as to the relief prayed. Be this as it may (and I confess that I am not without doubt on this point), does this order, the strict language of which is relied upon, also carry out of the case the answers to the said cross-bill, which answers fully set out the rights of the grantees under these several deeds of conveyance? As this is the main question in this case, because without its

consideration there is nothing practically for the decision of the master, would not the complainant, Wm. H. Harison, and the said grantees (they having been made parties) have filed a supplemental bill by way of amendment to the original setting up these equities intervening since the filing of said original bill and answers? This obviously would have been done if the cross-bills had not been filed.

Now, as the practice of filing supplemental bills is abandoned in Georgia, and the matter usually set up in such bills is only brought to the attention of the court by amendment, do not the answers to the cross-bill stand in equity as amendments to the original bill?

A court of equity deals with the substance to the sacrifice of form; and if, therefore, rights, substantial in themselves, are brought before the court, does it matter how they may be labeled, or in what legal name they may be baptized? Again, if a defendant in an equity cause may use his answer to an original bill as a cross-bill (see code, §4181), why may not a complainant use his answer to a cross-bill as a supplemental bill? I therefore hold that the pleadings in this case give to the master jurisdiction of this subject-matter, and shall therefore proceed to the determination of the same. It is further urged by the solicitor for the judgment creditors that Wm. H. Harison had no legal right to convey his interest in the legacies left to him after filing his bill against the respondents; that this resort to a court of equity, under the matters set forth therein, was, in equity, an impounding of the assets for legal and equitable distribution among the creditors, and that any conveyance made by him, after filing the bill in question, is null and void; that the creditors were restrained by injunction from enforcing the payment of their claims and thereby placed at a disadvantage.

Second. Because there was no assent of the executor to the legacies at the time of the deeds. After careful consideration, I am unable to find any authority, which goes to the extent claimed, in support of the position that the filing of a bill by an executor of an estate amounts to an impounding of the assets of a legatee. This original bill was filed by Wm. H. Harison, as executor, in the interest of the estate which he represented, and in the interest of creditors of same, and was not filed by Harison as legatee. And while the executor and legatee may be united in the same individual, they are distinct and separate entities in law. If the bill had been filed against the creditors of the estate who were complaining, there would be force in the position assumed, but I know of no legal impediment to a sale by a legatee under such circumstances, who does so *bona fide*, or what is equivalent to a sale conveying his interest in extinguishment of a pre-existing indebtedness. It is true, in this case, that the injunction was of force at the time of these conveyances, but it only operated to restrain the creditors from enforcing the payment of their claims. It did not restrain them from reducing

their respective debts to judgment, which they did; how, therefore, were they restrained so as to affect their rights as judgment creditors?

These deeds purport to have been given for not only valuable, but adequate consideration, and no proof whatever has been offered to the contrary. The holder of a promissory note is presumed to be such *bona fide* and for value (code, §2787), and no proof has been furnished which negatives this legal presumption. The several deeds were executed on the 4th of December, 1880, and, so far as appears to me, in the exercise of a legal right to prefer the claims of the grantees as *bona fide* creditors. The judgments were rendered April 15, 1881, several months thereafter. They were, therefore, not liens upon the property in question, unless the said conveyances were void *ab initio*, and it is said that they are, because there had been no assent to the legacies at the time of their execution. Even if it were true that the act of the grantor, who was both executor and legatee, in conveying this property, did not amount to an assent, I am unable to understand how this question can be raised by the creditors of a legatee. The question of assent is one only which affects the creditors or others interested in an estate, and how could the act of a legatee, in conveying for value his interest in an estate, be void. It may be in some cases voidable as to the creditors of the estate, but not void even as to them. If there be any debts due by the estate, which would defeat the title of the legatee, in what better position is the creditor of a legatee than that of the legatee himself? I know of no reason why a legatee cannot convey what interest he may possess in an estate in the absence of the assent of the executor. The purchaser in such a sale would simply stand in the shoes of the legatee, and take by his purchase just such interest as the legatee had, subject to the debts of the estate. Wm. H. Harison having, therefore, according to the proofs before me, conveyed his interest in the estate of his wife, Mary G. Harison, for valuable consideration, before the rendition of any judgment against him, and there being no evidence to negative the *bona fides* of these several deeds, I am constrained to hold and decide that the purchasers, Wm. H. Harison, jr., Frances L. and Anna M. Harison, acquired by these several conveyances a title superior to the rights of the said judgment creditors.

The defendants submitted to the master a motion to exclude various pieces of testimony; also to report that there was nothing submitted under the evidence requiring a report under the original bill, the evidence, other than documentary evidence, relating to matters contained in the stricken cross-bills. This motion was overruled. The defendants excepted to the report on the following grounds:

(1) In entertaining jurisdiction in this case as such master, over the written protest filed with him, a copy of which is annexed, marked "A," and proceeding to hear evidence in the case April 30th, 1883.

(2) In exercising jurisdiction, when by two orders of court, one October 22d, 1881, dismissing the plea and cross-bills of these defendants on demurrer of complainant, and one June 15th, 1882, passed after the hearing the case before the Supreme Court, February term, 1882, 68 *Ga. R.* 463, the case was ordered to stand for trial at the next October term of the court.

(3) Because the master having entertained jurisdiction under the order of reference of October 22d, 1881, paragraph fourth, failed to comply therewith as to the matters in the original bill, particularly the value of the estate, how it is to be kept together, the amount of income and the disposition thereof, and what are the valid outstanding claims against the estate to be paid.

(4) Because the master, at the close of the evidence, refused to entertain any one of the motions made to exclude evidence admitted over objection of defendants, which motions were reduced to writing, filed with the master and are returned by him and filed with the report certified to as correct, and to which reference is made as if again set out.

(5) Because the master refused to take action in favor of the defendants, as moved for, upon any one of the several grounds set forth in said motion so of file and certified to, and which are referred to and relied on as if again set out herein.

(6) Because the court admitted in evidence, over defendants' objection, the deed from Wm. H. Harison to his sisters, dated December 4th, 1880, the same never having been recorded and proved by the conveyancer and attesting witness, Maj. J. B. Cumming, one of the solicitors of complainant, who filed the bill and obtained the restraining order, to have been delivered to F. W. Capers, attorney

for one of the co-defendants, then bound by restraining order after December 6th, 1880;—the ground of objection being, that under the allegations in the bill and the terms of the restraining order, the motion of defendants, then of file and served, and answer praying for the appointment of a receiver, such acts were invalid to pass title against defendants, as they constituted a preference void in equity.

(7) Because the court admitted in evidence, over defendants' objection, the paper of Wm. H. Harison to his son, dated December 4th, 1880, the same never having been recorded and proved by the conveyancer and attesting witness, J. B. Cumming, Esq., one of the solicitors of complainant, who had filed the bill and obtained a restraining order, to have been delivered, after December 6th, 1880, to W. W. Montgomery, Esq., another of complainants' solicitors, on his return thereafter from Washington county; —the ground of objection being, that under the allegations in the bill and the restraining order, the motion of defendants then of file, and the cross-bill served December 6th, 1880, with the relief prayed for therein, the act was void, and the instrument passed no title thereby or by its terms, these two solicitors not being authorized in equity to consummate thereby a preference not previously existing by contract or operation of law.

(8) Because the master, when the record showed that after the reference to him October 22d, 1881, the relief prayed for by the answers of these defendants in lieu of a cross-bill had been stricken by another order, and nothing remained except what was responsive to the original bill, reported that the answers to the cross-bill so stricken, and which were filed October 17th, 1881, presented matters which, over the objection of defendants, he would allow to be considered, and did entertain and adjudicate upon it, as an amendment to the original bill, and granted thereunder relief to the sisters of complainant not repre-

sented or asking it, as to the deeds of December 4th, 1880.

(9) Because the master reported as follows : It is admitted that the aforesaid mortgages have been foreclosed and the property covered by them sold and the proceeds applied to the payment of the liabilities of said firm,—not qualifying it as having occurred after the filing of this bill and decision of January 3d, 1881.

(10) Because the master reported as follows: I do not believe, however, that such an interest as Wm. H. Harison took by the first item of the will was leviable by attachment, and therefore the levies established no lien as to the interest;—the error being in ruling upon the validity of the levy on the life estate, complainant not having prayed for it in his bill and no defendent asking it at his hands.

(11) Because the master reported as follows: I am of the opinion, and so decide, that the interest of a legatee in an estate not distributed or settled, and when no assent has been given to the legacy, is not liable to attachment at the time the attachments were levied;—the error being that the question was not raised by the pleadings properly before him, and contrary to the evidence that sufficient time had elapsed from his qualification to presume assent, and he had done other acts from which the law implied it.

(12) Because the master, under the prayers of the original bill, filed November 1st, 1880, to which was annexed exhibit C 3, whereby individually, as life tenant and remainderman, and as trustee and executor with testamentary power as to the three-fourths interest in remainder under the said will of Mary G. Harison, Wm. H. Harison, ratified and confirmed previous conveyances as executor to Wm. H. Harison, jr., and stated the same to be considered binding, in the event he died intestate, as a deed made pursuant to said will, disposing of the residuum to the extent of said land hereinbefore conveyed, reported that it nowhere appears by evidence before me that there was, either in express terms or by implication, an assent to the

legacies levied on. In legal effect, therefore, these legacies were, at the date of said levies, part and parcel of Mrs. Harison's estate.—The error appears from the record aforesaid, which made him assent so far as his creditors were concerned, and from the time which elapsed after the record of the will in Georgia.

(13) Because the master reported as follows: Be this as it may (and I confess that I am not without doubt on this point), does this order, the strict language of which is relied upon, also carry out of the case the answers to the said cross-bills, which answers fully set out the rights of the grantees under these several deeds of conveyance? As this is the main question in this case, because without its consideration there is nothing practically for the decision of the master, would not the complainant, Wm. H. Harison, and the said grantees, they having been made parties, have filed a supplemental bill by way of amendment to the original, setting up these equities intervening since the filing of the said original bill and answer? This obviously would have been done if the cross-bill had not been filed.—The error being in not sustaining the doubt, and ruling upon matter not before him properly in stating, " This is the main question in the case as made," and in considering the fact that the grantees were made parties; this having been moved for by the defendants as to their cross-bill, when the complainants objected, as shown by the order of June 29th, 1881, and which grantees were not made parties until after the return of the case from the Supreme Court, June 15th, 1882.

(14) Because the master reported as follows: I therefore hold that the pleadings in this case give to the master jurisdiction of this subject-matter, and shall therefore proceed to the determination of the same.—This is error upon its face, as there were no pleadings but what were left under the decision of the Supreme Court.

(15) Because the master reported as follows: Even if it were true that the act of the grantor, who was both

executor and legatee, in conveying this property did not amount to an assent, I am unable to understand how this question can be raised by the creditors of a legatee.—This is error, as such assent only arose after the bill was filed and other creditors enjoined, and because the creditors of this legatee were parties to the bill, was the main ground of sustaining jurisdiction.

(16) Because the master, after it was shown by the record that after service of the restraining order on defendants, November 3d, 1880, and of their motion to appoint receiver on complainants' motion, November 12th, 1880, and the filing of answers of defendant, November 25th, 1880, in which cross-relief was prayed to apply the value of the life estate of Wm. H. Harison with his one-fourth estate in remainder to his debts established under this bill, reported, "but I know of no legal impediment to a sale by a legatee under such circumstances, who does so *bona fide*, or, what is equivalent to a sale, conveying his interest in extinguishment of a pre-existing indebtedness";—the error being in stating an abstract proposition of law and applying it to just such circumstances as were disclosed in evidence before him.

(17) Because the master reported as follows: Wm. H. Harison having, therefore, according to the proofs before me, conveyed his interest in the estate of his wife, Mary G. Harison, for valuable consideration, before the rendition of any judgment against him, and there being no evidence to negative the *bona fides* of these several deeds, I am constrained to hold and decide that the purchasers, Wm. H. Harison, jr., Frances L. and Anna M. Harison, acquired by these several conveyances a title superior to the rights of the judgment creditors.—This is error, as the matter was not before the master, and is a side issue brought into the case under the present pleadings to sustain what was attacked by the cross-bills of defendants, and as to which they could not be heard.

(18) Because the entire report is contrary to law and

equity, and outside of the questions raised by the pleadings, and improperly before him, if he had jurisdiction to proceed, which was denied.

These were subsequently amended April 14th, 1884, as follows :

(1) For not fixing and determining the present value of the estate of Mary G. Harison, in Georgia or elsewhere, as to which complainant in the original bill prayed for instructions how to administer the same.

(2) For not determining who were creditors of the said estate, in Georgia or elsewhere, the amount of indebtedness and how the same was to be provided for.

(3) For not determining whether complainant was in possession of the property as executor, life-tenant, trustee or remainderman at the filing of the bill, and what the estate was which was in his hands for direction at that time.

(4) For not fixing and determining the value of the estates of Mary G. Harison at the time of her death, what amounts had been advanced therefrom by complainant, William H. Harison, as executor to his co-complainants, William H. Harison, jr., R. Morley Harison and Noble W. Harison, and what was the effect of such advancements in reference to the personal interest of Wm. H. Harison, sr., in the estate to be held for his life use, with remainder to be disposed of by him.

(5) For not construing the provisions of said will so far as the same affects the rights of the creditors of Wm. H. Harison, parties to the bill, and particularly in view of his failure to administer the estate and qualify in Georgia.

(6) For not determining, as between complainant and his creditors, the effect of his failure to make any returns from the date of his qualification in New Jersey until the filing of the master's report, for any act of his as executor, beneficiary for life, trustee or remainderman.

(7) For not determining what was the duty of the executor as to keeping the property together, or selling and distributing the same, nor within what time or in what manner distribution should be made.

On June 27, 1885, the exceptions of law were overruled, and the defendants excepted *pendente lite.*

Notice was given by complainants of an intention to move to amend the bill and claim damages against the defendants on account of injury growing out of the litigation. It was alleged that all of the defendants thus sought to be pursued were non-residents of Richmond county, and all non-residents of the State, except the Bank of Rome, and that they were represented by Frank H. Miller, Esq. The defendants objected on the ground that such an order was not authorized under the law and the condition of the pleadings, and because it introduced matter not referred to the auditor, whose report was of file. Other objections were presented, because the particular complainants were not disclosed, and whether the supplemental relief sought was joint or several; because it comes too late after report of the master and exceptions filed thereto; because the act of September 24, 1881, under which the reference was made, authorizes no such action to be taken, and no proper application has been filed thereto; and because the court had no power to pass such an order without referring the matters put in issue to the master. (These objections were filed February 15, 1884.) On the same day, an order was passed overruling the objections, but leaving open the right of excepting to the validity or sufficiency of the amendment or service. Defendants excepted *pendente lite.*

On March 11, 1884, complainant Wm. H. Harison, executor, who alleged that in that capacity he represented the interests of R. H. Gardiner, the estate of Geo. N. Jones, the holders of W. H. Harison's life estate in the property of the testatrix sold by him on December 4, 1880, to Frances L. and Anna M. Harison, and all other creditors and legatees of the estate of testatrix not complainants to the bill; also Wm. H. Harison, jr., as legatee and purchaser, and Wm. H., sr., of his interest in remainder under purchase of December 4, 1880, and

Richard M. and Noble W. Harison, legatees under the will, filed a "supplemental amendment" to the bill, alleging, in brief, as follows : Recited the making of the deeds; that "he was and is advised by counsel he had a right to do so under the laws of Georgia;" and also the action had in suing out attachments and the cross-bills by original defendants and the assignee of the Bank of Rome; claimed, for suing out the attachments, obtaining restraining order on cross-bill and being stubbornly litigious, damages for R. M. Harison, $10,000 ; Noble W. Harison, $20,000; all the complainants, $50,000; thereafter averred that W. H. Harison, jr., had, on August 12, 1882, by letter to the assignee of the Bank of Rome, offered to the creditors of W. H. Harison, sr., $10,000 in compromise; called for the production of the letter as evidence of damages resulting from the date of the letter ; and closed with prayer, waiving discovery, "for a decree against said defendants, jointly and severally, for such damages as a jury may think each and every one of them are entitled to under the circumstances."

This amendment was served, with subpœna, upon Frank H. Miller, as the solicitor of the original defendants, and personally upon Robert T. Fouche', then assignee of the Bank of Rome. At the April term, 1884, after such service, the sheriff's return was traversed as to the sufficiency of the service to bind the defendant as to the matters set forth in the amended bill, which traverse was overruled, and the defendants excepted. They then demurred to the bill, as so amended, upon the following grounds :

(1) Because there is a misjoinder of parties with the original complainant.

(2) There is no sufficient cause set forth in the amendment to the bill to entitle the complainants to be heard as to matter arising since the commencement of the suit.

(3) The amendment sets forth a separate and independent cause of action, which can only be enforced after

personal service upon these defendants at the place of their domicile, or by foreign attachment against their property ; and service upon their counsel is only good and effectual so far as it may affect the rights of these defendants to prosecute these claims, now enjoined under the provisions of the original bill, separately and independently from the matters involved in the cross-bills of these defendants, which have been stricken on demurrer of the complainants, and to which interlocutory exceptions are now on file.

(4) Because the bill, with the amendment, is multifarious, vague, uncertain, and claims damages too remote to be recoverable, and particularly against these defendants, who, if liable at all, are severally responsible.

(5) Because the allegations in the amended bill show such conduct on the part of the original complainant and his co-complainants as amounts to an estoppel *in pais* on their part.

The bill was amended, under announcement from the bench, by alleging that the damages were done by the defendants from malice and without probable cause.

The demurrer was renewed, and it was added that the complainants had an adequate remedy at law ; that a new cause of action was added, making the original bill multifarious; that the amendment was not sworn to, and claimed relief which could not be granted, because the original proceedings for which damages were claimed had not terminated. The demurrer and motion to strike were overruled, and exceptions *pendente lite* were filed.

On April 21, 1884, the Cleveland National Bank filed an application to remove the case to the Circuit Court of the United States, under the act of 1875. The petition alleged that, at the date of the amendment of March 11, 1884, all the complainants were citizens of Georgia, New York, Maine and Florida, and all the defendants to the original bill, who levied attachments, etc., were non-residents, and all were so, except the Bank of Rome. The

bond was made payable to "Wm. H. Harison, executor of Mary G. Harison, and others." On the same day, the Soddy Coal Company filed a petition for removal, under the act of 1867. The bond was payable to "Wm. H. Harison, as executor of Mary G. Harison, and other complainants." The petitions were overruled, and exceptions *pendente lite* were filed.

On June 16, 1884, the defendants filed objections to the passing of an order allowing fees to the master, on the following grounds : Because the court has no jurisdiction in the premises ; because, if the amendment be germane, it must be referred to the master and passed on ; because the exceptions to the report have not been finally passed on, and no verdict or final decree rendered ; because the master's costs are for determination on final decree ; and because, so far as claimed against defendants, they are excessive.

At the April term, 1885, the court passed an order allowing the master $575 as fees, one-half to be paid by each side, "provided always this order shall remain open and subject to exception until final decree, and may be reviewed by either party at that time, except as to the sum fixed hereby as value of services." The defendants excepted *pendente lite.*

On December 8, 1886, R. T. Fouche', assignee of the Bank of Rome, and successor of Reynolds in that office, filed an answer to complainants' bill, including a cross-bill. He alleged that, since the filing of the original bill, R. H. Gardiner, the annuitant, had died, and that there is substantially no indebtedness against the estate of Mary G. Harison, unless something should be found to be due the estate of Geo. N. Jones. He denied the right of Wm. H. Harison to represent the interests of others, and prayed that the legality and validity of the indebtedness to the estate of Geo. N. Jones be determined, and that, after paying the claims equal or superior to the interest of Wm. H. Harison in the estate of Mary G., receiver be

appointed and distribution made among all his creditors, without preference, except as allowed by law, as they stood at the filing of the original bill on November 1, 1880.

On December 8, 1886, on motion of complainants' counsel, so much of the amendment to the bill and the amendment thereto as claimed damages against defendants, was stricken, and the amendment was allowed to stand only so far as to put in issue all matters in dispute before the master and upon which proof was offered before him, but which may not be sufficiently put in issue by the original bill ; and this order was granted without prejudice. The death of R. H. Gardiner having been suggested, it was entered of record, and the case was ordered to proceed.

Complainants' solicitors moved that the case proceed under the act of October 16, 1885, regulating practice as to master's reports. Defendants' solicitor claimed that the trial should be had under the act of 1880 (code, §3097 (a)), exceptions having been filed before the passage of the act of 1885 ; and that the act of 1885 was unconstitutional and inapplicable to the case, and limited the right to try issues of fact before a jury. The court ruled with the complainants on this point, and this is assigned as error.

Defendants then. demurred to the original bill as amended December 8, 1886, and moved to strike from it all allegations of the amended bill filed March 11, 1884, and particularly the answer of the complainant, Harison, filed October 17, 1881, to the answers and cross-bills of the defendants, which were stricken on demurrer, the master having found the answer of complainant to be a part of his pleadings as a supplemental bill and giving the master jurisdiction. This demurrer and motion to strike were overruled, and the defendants excepted.

The case then proceeded on the exceptions of fact to the master's report. Complainants demurred to the first exception as immaterial and one which could not affect

the case under the findings of the master. They also moved to dismiss it on the ground that the finding of the master thus excepted to was not erroneous, and in support of this motion submitted the evidence relating to this finding. The demurrer and motion were heard together, and the exceptions dismissed. Defendants excepted.

Complainants then moved to strike the other grounds as matters of law overruled by the court in his order approving the master's report, and also because, so far as the exceptions were exceptions of fact, it did not appear that error had been committed, and they presented no issue to be submitted to the jury. Pending this argument, the defendants moved to be allowed to amend their exceptions of fact as follows: "Because the master found that the deeds dated December 4, 1880, from Wm. H. Harison individually to Wm. H. Harison, jr., and Frances L. and Anna M. Harison, were not void and not made for the purpose of hindering and delaying these defendants as creditors of Wm. H. Harison." This amendment was refused on the ground that this question had not been passed upon by the master. The motion of the complainants was then granted, all the exceptions stricken, and the complainants' solicitors directed by the court to take a verdict in accordance with the finding of the master's report. To this the defendants excepted.

Further action was then postponed until December 10. Defendants requested the court to decree as follows:

(1) That the only matter remaining for final decree was what was contained in the original bill.

(2) That the evidence required the appointment of a receiver.

(3) That the interest of William H. Harison, passing under the will of his wife, was subject to levy of the attachments.

(4) That the deeds of December 4th, 1880, to William H. Harison, jr., were invalid, because the consideration was

v 78-26

furnished out of the estate from a sale of the estate's property made after the filing of the bill, and the granting of the restraining order which impounded all the interest of William H. Harison, sr., in the estate and prevented him from alienating or altering the condition of the same.

(5) That under the statements in the bill, the validity of the attachments was not in issue.

(6) That the service of the notice for the appointment of a receiver prior to the date of the deeds estopped the complainants from making the conveyances, and the grantees from accepting them, and that the grantees could not be heard through William H. Harison, as executor, or his co-complainants under this bill. to set up their rights under those deeds by amendments made after the filing of master's report, averring himself to be suing for the use of the grantees.

(7) That no relief should be granted to the grantees in these deeds under the pleadings in the case.

These requests were refused, and the defendants excepted.

The court then passed an order, reciting the overruling of the exceptions of law, dismissing the exceptions of fact, and referring the question to the jury in order that a verdict might be taken in accordance with the findings of the master. The following verdict and decree was then taken:

"We, the jury, find and decree that, at the time that the said affidavits were made for the purpose of obtaining attachments in favor of the creditors of Hazelton & Harison and of Wm. H. Harison, sr., and at the time of the levy of said attachment upon the interest of the said Harison, sr., in the estate of the said Mary G. Harison, the said Wm. H. Harison, sr., was a citizen and resident of Georgia. We further find and decree that traverses of the ground upon which said attachments were issued were filed at the proper time by said Wm. H. Harison, and that the traverse has been successfully maintained by the proof. We further find and decree that there was, neither in express terms nor by implication, any assent to the legacies levied on by said attachments, and that said legacies were, at the date of said levies, part and parcel of Mrs. Harison's estate, which had not been administered, nor had its debts been paid.

"We further find and decree that the two deeds made by Wm. H. Harison, sr., on December 4, 1880 (the one-half of his life interest in the estate to his sisters and the other half of his one-fourth interest in remainder in said estate to his son, W. H. Harison, jr.), were for a valuable and adequate consideration, and made and executed by him *bona fide* in payment of debts due by him to the grantees, and that said deeds were duly accepted by said grantees in full satisfaction of said debts and passed the interests intended to be conveyed by them to the grantees. We further find and decree that said deeds were executed and delivered by the grantor and accepted by the grantees prior to any judgment obtained by the excepting creditors against said W. H. Harison.

"We further find and decree that in all other respects the findings of the master are correct, and we hereby affirm the same and make them a part of this verdict.

"We further find and decree that the cost of suit be paid by said excepting defendants, to-wit, the Mechanics' and Traders' Bank, the Soddy Coal Company, the Cleveland National Bank, the Roane Iron Company and the Bank of Rome."

When the verdict was presented, it was objected to on the ground that it was not a simple finding sustaining the master's report, but set out other and additional findings of the jury; because it did not cover the issues raised under the prayers in the original bill; because it passed upon the allegations made under the amendments to complainants' bill, filed March 11, 1884, and February 4, 1885, and the answer of Harison to defendants' cross-bill (which was stricken on demurrer), all prayers under the same having been stricken at the commencement of the trial, December 8, 1886. These exceptions were each overruled, and the defendants excepted.

Defendants excepted to the decree also because it failed to cover the issues set forth in the original bill by establishing the outstanding claims against the estate of Mary G. Harison in favor of the creditors thereof; and because it confirmed conveyances made by Wm. H. Harison to his sisters and his son on December 4, 1880, after the filing of the original bill and the granting of the restraining order of November 1, 1880. This exception was overruled, and the defendants excepted.

Fouche', assignee, also excepted to the decree on the ground that it failed to grant any of the relief prayed for in his cross-bill. Error was assigned, both on the rulings set forth in the main bill of exceptions, and on those filed *pendente lite.*

The defendants in error also filed a cross-bill of exceptions, assigning error on the following ruling of the court: On December 4, 1886, during the October term of court, complainants' counsel moved to strike the exceptions filed by the defendants to the master's report, on the ground that the defendants were in contempt of court in failing to obey the order requiring them to pay one-half the master's fees, and that the defendants could not be heard until the contempt was purged. In support of this motion, complainants introduced the affidavit of the master, showing that the defendants had declined to pay any portion of his fees, and that all of them were non-residents, except the Bank of Rome, which was insolvent. The master stated that the motion to strike was not made at his instance, that he knew of no property in the State on which an execution could be levied, and had not asked for an execution to issue. The court suggested that the motion to strike could not be entertained until the defendants were adjudged to be in contempt. The complainants then took a rule *nisi* against the defendants to show cause why they should not be adjudged to be in contempt. Through their counsel, they showed for cause that it appeared that the motion was not made at the instance of the master; that the order for fees expressly provided that it should remain open and subject to exceptions until final decree; that exceptions *pendente lite* had been filed thereto; that a failure to pay fees was a matter personal to the master, to be enforced by execution, and no execution was issued; and because the resident defendent, the Bank of Rome, had failed and its assignee was not authorized to make such payment, and the

State of Georgia was a depositor in the bank and entitled to priority of payment.

The court discharged the rule, and the complainants excepted on the ground that he should have made it absolute, and should have stricken the exceptions to the master's report.

FRANK H. MILLER, for plaintiffs in error in main bill of exceptions, and for defendants in cross-bill.

W. W. MONTGOMERY; BARNES & CUMMING, *contra*.

BLECKLEY, Chief Justice.

We think the trial took place in pursuance of the order of October 22d, 1881. The last paragraph of that order was never excepted to, *pendente lite* or otherwise, as may be seen by scrutinizing the record from page 249 to 252 (d) inclusive. This paragraph directs "that the case stand for trial upon the original bill and parties complainant as amended December 6th, 1880, and the matters alone responsive thereto in the answers of the several defendants, exclusive of the matters set forth in the cross-bills of the defendants filed as above stated." Thus the order for trial severed the bill from the cross-bills, as such, and we do not discover from the record that the connection was ever restored, or that the court paid much more attention to cross-bills, whether filed before the order was passed or afterwards. The master's report indicates that the master thought, or inclined to think, that no cross-bill was before him, and the amendment last filed to the main bill was finally shaped so as to put in issue all matters in dispute before the master, and upon which proof was offered before him, but which might not be sufficiently put in issue by the original bill. This finality of form was given to the bill as late as December 8th, 1886, nearly the last day of the peripatetic hearing. Thus

the main bill was considered as covering everything that was adjudicated, for there was no adjudication at the hearing, except as to matters which were before the master, his report being the only basis of the verdict and decree. Through the master came every fact and all the law of the case tried.

As did the court below, so shall we leave the cross-bills behind us. Four of them were put to sleep under demurrer, October 22d, 1881, then partially awakened, June 15th, 1882, by setting them for trial at the next October term. Another, purporting to be an amendment, the same day the four were laid out by demurrer, was filed October 22d, 1881, and has not since moved in its bed, so far as we can ascertain. The last of all was filed December 8th, 1886, and is at rest in the record. Whether the court below ever looked upon its face, we know not. It was served on nobody except the complainants in the main bill, named no one as party defendant, had no prayer for subpœna, and no subpœna was attached to it. It was a mere answer, with prayers for relief scarcely incompatible with the prayers of the original bill.

Having thus ascertained that the case tried was the main bill, and it alone, we are prepared to rule on the motion made to dismiss the writ of error, our decision upon which was reserved unt'l after the whole case was argued because of the bewildering intricacy of the amendments, orders, exceptions, etc., etc.; the record being a swarming hive of professional industry and fecundity. Until this record came before us, we had no adequate conception of our brother Miller's energy; and he doubtless will never have any conception whatever of the torture which his energy has cost the writer of this opinion, whilst he, the writer, was supposed to be taking his ease in the romantic wilds of upper Georgia. A skeleton in one's closet is nothing to such a record in one's trunk in full view of the mountains.

1. The motion to dismiss the writ of error was put orig-

inally on seven grounds. The fourth was abandoned, leaving us only six to dispose of.

The first ground is that certain named defendants to the original bill are not made defendants in error. One of these defendants, Gardiner, died pending the cause and was dead at the hearing. His representatives, if he had any (and of this the record does not inform us), were never made parties in the court below. If the case could be tried without them as parties, it certainly could be reviewed without them. The others, as was also the deceased, were non-residents of the State and were served with the bill and some of the cross-bills by publication, but never appeared in person or by counsel, never pleaded, answered or demurred to the original bill or to the cross-bills. As these defendants were beyond the jurisdiction of the court, and stood aloof from the case, although parties on the record, the trial below was *ex parte* as to them, and it is therefore doubtful whether they are necessary parties to the writ of error at all. But whether so or not, they cannot be necessary parties defendant, for they stand in the record on the same side of the case with the plaintiffs in error, and they should be co-plaintiffs in error if anything. Perhaps it is the sounder view that they ought to occupy that position, and we have accordingly passed an order granting leave to join them as co-plaintiffs in error by amendment, and the privilege of amending has been exercised conformably to that order. For the practice in such matters, see *McNulty et al. vs. Pruden*, 62 *Ga*. 135, and authorities cited. There is no doubt that, relatively to the main case, this amendment covers all possible objection touching the want of parties, for when a bill in equity, filed for direction, etc. by an executor against creditors of the estate and his own personal creditors, is brought to this court by some of the latter, it is not necessary to make any of the defendants in the bill defendants in error.

2. The exact point of the objection, however, as shaped

in the motion and urged in the argument, was that, though the main case might not, the cross-bills do require these persons to be defendants in error, for that they and the plaintiffs in error are on opposite sides of the cross-bills. The fact is true, but the consequence does not follow. The case actually tried, as we have seen above, was the original bill alone; the cross-bills were not disposed of, save that some of them were long ago dismissed on demurrer, which demurrer was by the complainants in the original bill, and by them only. And the complainants are all defendants in the present writ of error. The cross-bills thus demurred to were dismissed under exceptions taken *pendente lite*, and what is now to be examined touching them, if anything, is, whether these exceptions were well founded, and whether the rulings complained of affected, or might have affected, the result of the trial that took place on the main case. With proper parties to the writ of error, relatively to the cause actually tried, exceptions taken *pendente lite* in the progress of the cause, such as exceptions to rulings on cross-bills, may be reviewed as to any errors affecting the final result. Errors touching the cross-bills, which did not affect that result, will now and here go for naught. Code, §4250. The so-called cross-bills were answers by some of the defendants in the court below, taking their character of cross-bill from code, §4181; and in their element of cross-bills they sought relief against co-defendants as well as against the complainants in the original bill, and the complainants alone demurred, the co-defendants not joining in the demurrer, nor even making any appearance in the cause at any stage of it. The demurrer being sustained, it surely is not necessary to make such co-defendants parties defendant to the writ of error, in order to have the judgment sustaining the demurrer reviewed. All the parties to the demurrer on both sides are parties to the writ of error, and this would be sufficient were the writ of error founded directly on the judgment sustaining the demurrer and on that alone.

3. The second ground of the motion to dismiss is that the writ of error was not sued out within sixty days after exceptions of law to the master's report were overruled, his report having, in one of the rulings excepted to, held that the attachments pending in a court of law were invalid. The suggestion in this ground is that the report with the judgment of the court thereon dismissed the attachments, and that a judgment dismissing an attachment is a final judgment. But the present writ of error is not brought in the attachment cases, which were cases pending at law, but in the equity cause; and it is enough to say that overruling exceptions of law to the master's report was no final disposition of any part of the cause, whilst exceptions of fact were still pending and no verdict or decree had been rendered. An equity cause is not terminated by the master's report or by disposing of exceptions to the same, but by decree. Much more might be said, but this is sufficient. It is plain to any one not of counsel that this ground of the motion, were it well taken, would not go to the whole writ of error, but only to one subject-matter amongst the many with which the writ is concerned.

4. The third ground of the motion is that "the bill of exceptions does not contain the evidence submitted to the judge on the hearing of the exceptions of fact, particularly such additions as were made to the testimony filed by the master." The judge, in ruling upon exceptions to the master's report, could not, according to law, have any evidence before him save that reported by the master. Acts 1884–5, p. 98. Code, §§3097(a), (c).

The master's report of the evidence is no less a part of the record than is the rest of the report, and the whole report should and does come up in the transcript. It follows that none of the evidence need be incorporated nor referred to in the bill of exceptions. This view of the matter disposes of the sixth ground of the motion as well as the third.

5. The fifth ground of the motion is that the plaintiffs

in error have not paid one-half of the master's fees, as required by an order passed in the progress of, the cause. The suggestion here is that failure to pay is disobedience, that disobedience is contempt, and that parties in contempt are outlaws until their contempt is purged.    The order, as we construe it, was not peremptory as to time of payment, but only as to the amount ultimately to be paid. To raise a case of contempt which would shut the door of this court in the face of a suitor would require a very positive order and very palpable disobedience. The dignity of the State, of this court or of the court below has not been insulted, if we are any judges of dignity, and we therefore affirm the judgment on the cross-bill of exceptions as well as decline to dismiss the writ of error.

6. The seventh ground of the motion makes again the sixty days' point presented in the second ground, applying it to the decision denying the petitions to remove the cause to the Circuit Court of the United States.    Granting that decision to be a final judgment, the point taken might be a good reason for not reviewing that decision on this writ of error, but certainly it is no reason for dismissing the writ and declining to review the final judgment in the main case, with such other decisions excepted to as stand clear of the question of removal.

The motion to dismiss the writ of error is denied.

7. We proceed now to dispose, as briefly as possible, of the main case, in doing which we shall rule principles rather than mere points.

It is contended that when an executor files a bill as executor, he commits himself to nothing in his personal and individual character, that he is not a party otherwise than as representing the estate, and that pending the bill, he may act as freely, touching any individual right or interest involved, as if some other person were the complainant. To this doctrine we are quite unable to assent.    On the contrary, as we understand the law, an executor who files a bill in his representative capacity is a party thereto in

his individual capacity also, if as an individual he has a manifest interest in the subject-matter of the bill. Thus an executor being a legatee to the extent of the net income of the whole estate during his life, and to the extent of one-fourth of the general residuum, having filed a bill as executor to restrain some of his creditors from proceeding to subject his interest by levy and sale at law, to which bill creditors of the estate, as well as some of his own creditors, are parties defendant, and praying for a decree directing him, in view of the conflicting claims of the defendant, how to administer the estate of his testatrix, and that the defendants establish their priorities and show to what extent they can legally subject assets of the estate to the payment of their claims, is a party complainant, not only as executor, but likewise as legatee and debtor. Can it be supposed that the decree on such a bill would not bind him individually in respect to his legacies, or that as an individual he would not be entitled to take the benefit of the decree in so far as it might redound to his individual interest touching those legacies? Moreover, is it not as much for the protection of the executor as for the advantage of the estate, and often more so, that a court of equity interposes to give direction? Whoever heard that an executor has to make himself a party to his own bill in order to bind himself individually, or to give himself, as creditor, legatee or otherwise, the fruits of the decree to the extent of his personal interest in the same? Is it possible to doubt that on the present bill it would be competent to decree the proper disposition to be made of the legacies, whether to pay them out on the claims of creditors, or to hold them free from such claims? And how could the executor, as an individual, either shun the burden or be shorn of the benefit of any rightful decree on that subject that might be rendered? Unless we are wholly unfit to be judges on such a plain question, we are at a loss to understand why it should be considered a question at all. That no direct authority upon it has been

produced must be due alone to the fact that legal evolution has not progressed far enough to develop a needless precedent for a necessary conclusion.

8. Having, by his bill, submitted the fund in controversy, and the rights of all parties to participate therein, to the jurisdiction of equity, the complainant cannot, pending the bill, convey his interest in the estate to a portion of his creditors, in liquidation of their claims against him, to the exclusion of another portion, especially whilst the latter are held in check by a restraining order granted in the cause at his instance. By filing such a bill, warning creditors into court and forcing them to establish their priorities, he waives and renounces his legal right to prefer some creditors to others at his mere will. Certainly he cannot arbitrarily exclude those whose hands he has procured the court to tie for the time being. The court will not hold while he skins. The excluded creditors were tied and the preferred creditors loose. One of the latter was not a party to the bill until two days after the preference, and the other two, though parties, were not restrained, the bill not having prayed for any injunction as to them.

9. We need only add that, to accomplish the purposes of the bill, it is necessary to ascertain, first, the assets to be administered and their value. Next, the charges upon them as a whole, to-wit, expenses of administration, the debts of the testatrix, her charity legacies, the legacy of net income to her husband, the residuary legacy to him personally, and the residuary legacy to him in trust for his three sons. The next step is to eliminate from the general assets, by some practicable method, the present value of the husband's two personal legacies, so as to apply that value to his debts; and the next, to ascertain the amount of his debts, settle their priorities and provide for their payment out of this fund in due order, leaving to him the surplus, if any. It was the action of his creditors that gave occasion to the bill, and the real problem of the

litigation is, how to settle with them upon equitable principles, saving also their legal rights, so far as equity will give effect to such rights. So long as this problem is unsolved, there can be no proper disposition of the main bill, to say nothing of the answers in their character of cross-bills.

The master's report is fundamentally at variance with the principles of this opinion, and without discriminating between the sound and unsound exceptions to it, we direct that they be sustained as a whole for the purpose of clearing the case of that report entirely.

As to the elaborate and highly complicated machinery of the case, we purposely leave that intact, so that it may be worked by those who constructed it. Perhaps it may be expedient at some time to arouse the cross-bills and set them in motion, or it may be necessary even to add to them a few more of the same sort, but we hope not. It really looks like the ends of substantial justice might be reached without them, but it is well enough to hold them in reserve till after another experiment, the one already made being, as we have seen, misdirected and utterly barren. The train of the case was switched off into a siding instead of being run through on the main line. Having started as a through train, it must go through, and what is no less important, must keep its freight on board, not deliver the whole of it *en route*, or at some way station, to favorite consignees.

Judgment reversed.